UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,        :
                                 :
                                 :
                                 :        08 Cr. 363 (BSJ)
                v.               :
                                 :        **Opinion and Order**
ROBERT GONZALEZ,                 :
KHALIL WILLIAMS, AND             :
RASHEEM RICHARDSON,              :
                                 :
                                 :
              Defendants.        :
------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/12/10

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On June 25, 2009, a jury found Robert Gonzalez ("Gonzalez"), Khalil Williams ("Williams"), and Rasheem Richardson ("Richardson") (together, "Defendants") guilty of conspiracy to commit robbery, attempted robbery, and use of a firearm in furtherance of the robbery conspiracy in violation of 18 U.S.C. §§ 1951, 924(c), and 2.  Gonzalez and Williams were also convicted of possessing a firearm after being convicted of a felony offense, in violation of 18 U.S.C. § 922(g), and Gonzalez was convicted of possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(1)(C).

All Defendants now move for a post-verdict judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Gonzalez and Williams also move for a new trial pursuant to

1

Federal Rule of Criminal Procedure 33. For the reasons stated below, Defendants' Motions are DENIED in their entirety.

## BACKGROUND

Defendants were tried on charges contained in an Indictment (the "Indictment") filed on April 22, 2008. That Indictment describes a conspiracy to commit an armed robbery of Media Plaza, an electronics store located at 20 Bruckner Boulevard in The Bronx, New York and engaged in the sale of commodities in interstate commerce within the meaning of the Hobbs Act, 18 U.S.C. § 1951(b)(3). The Indictment alleges that Defendants possessed a .45 caliber Taurus pistol for use in furtherance of the Hobbs Act robbery of Media Plaza. The Indictment further alleges that Gonzalez and Williams had previously been convicted of a felony, and that, at the time of his arrest, Gonzalez possessed crack cocaine with intent to distribute.

Briefly, the evidence at trial established that, on the evening of March 25, 2008, Defendants and Mark Franco ("Franco") were arrested in the area of Media Plaza. At the time of arrest, Williams, Richardson, and Franco were inside Franco's Honda Accord, which also contained duct tape, latex gloves, laundry bags, the .45 caliber Taurus, and a starter pistol that looked like a real gun. Gonzalez was outside the car at the time of arrest, wearing latex gloves and hiding approximately 20 bags of crack cocaine in his buttocks.

## LEGAL STANDARD

## I.   Motion for a Judgment of Acquittal Pursuant to Rule 29 of
## the Federal Rules of Criminal Procedure

Federal Rule of Criminal Procedure 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Specifically, a court must grant a motion under Rule 29 if there is "no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." United States v. Irving, 452 F.3d 110, 117 (2d Cir. 2006) (quotation omitted); see also United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) ("[T]he court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." (internal quotation omitted)). "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." United States v. Hawkins, 547 F.3d 66, 71 (2d Cir. 2008). However, "[t]he ultimate question is not whether [the court] believe[s] the evidence adduced at trial established [the defendant's guilt], but whether any rational trier of fact could

3

so find." United States v. Eppolito, 543 F.3d 25, 45-46 (2d Cir. 2008) (internal quotation omitted). Therefore, "a defendant making an insufficiency claim bears a very heavy burden." United States v. Desena, 287 F.3d 170, 177 (2d Cir. 2002).

In considering the sufficiency of the evidence, the court must "view all of the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." United States v. Ware, 577 F.3d 442, 447 (2d Cir. 2009). A court must analyze the pieces of evidence not separately, in isolation, but together, in conjunction with one another. See United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) ("We consider the evidence in its totality, not in isolation, and the government need not negate every theory of innocence."). Accordingly, a court must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from the others." Guadagna, 183 F.3d at 130.

As the Second Circuit has repeatedly noted, "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court." United States v. Khedr, 343 F.3d 96, 104 (2d Cir. 2003) (internal quotation omitted). Moreover, "the jury's verdict may be based on entirely circumstantial evidence." United States v. Santos, 541

F.3d 63, 70 (2d Cir. 2008) (internal quotation omitted).

Because the jury is entitled to choose which inferences to draw,

the government, in presenting a case based on circumstantial

evidence, "need not exclude every reasonable hypothesis other

than that of guilt." Guadagna, 183 F.3d at 130 (internal

quotation omitted).  However, "a conviction based on speculation

and surmise alone cannot stand."  Santos, 541 F.3d at 70.

## II.  Motion for a New Trial Pursuant to Rule 33 of the Federal

## Rules of Criminal Procedure

Federal Rule of Criminal Procedure 33(a) provides that

"[u]pon the defendant's motion, the court may vacate any

judgment and grant a new trial if the interest of justice so

requires."  Fed. R. Crim. P. 33(a).  In evaluating a Rule 33

motion, "[t]he district court must examine the entire case, take

into account all facts and circumstances, and make an objective

evaluation."  United States v. Ferguson, 246 F.3d 129, 134 (2d

Cir. 2001).  Ultimately, the trial court must be satisfied that

"competent, satisfactory and sufficient evidence in the record

supports the jury verdict."  Id. (internal quotation omitted).

Under Rule 33, trial courts have "broad discretion . . . to

set aside a jury verdict and order a new trial to avert a

perceived miscarriage of justice."  United States v. Polouizzi,

564 F.3d 142, 159 (2d Cir. 2009) (internal quotation omitted).

However, "[t]he defendant bears the burden of proving that he is

entitled to a new trial under Rule 33." United States v.
McCourty, 562 F.3d 458, 475 (2d Cir. 2009) (internal quotation
omitted).  Before ordering a new trial pursuant to Rule 33, "a
district court must find that there is a real concern that an
innocent person may have been convicted." Id. (internal
quotation omitted).  Stated otherwise, the court must be
satisfied that "it would be a manifest injustice to let the
guilty verdict stand." United States v. Sanchez, 969 F.2d 1409,
1414 (2d Cir. 1992) (internal quotation omitted); see also
Ferguson, 246 F.3d at 133 ("The ultimate test on a Rule 33
motion is whether letting a guilty verdict stand would be a
manifest injustice.").

As the Second Circuit recently reiterated in United States
v. Bell:

> Manifest injustice cannot be found . . . unless the
> judge is prepared to answer "no" to the following
> question: "Am I satisfied that competent, satisfactory
> and sufficient evidence in this record supports the
> jury's finding that this defendant is guilty beyond a
> reasonable doubt?"  In making this assessment, the
> judge must examine the totality of the case.  All the
> facts and circumstances must be taken into account.
> An objective evaluation is required.  There must be a
> real concern that an innocent person may have been
> convicted.  It is only when it appears that an
> injustice has been done that there is a need for a new
> trial "in the interest of justice."

584 F.3d 478, 483 (2d Cir. 2009) (quoting Sanchez, 969 F.2d at
1414).  Given the stringency of this standard, "motions for a
new trial are disfavored in this Circuit," United States v.

Gambino, 59 F.3d 353, 364 (2d Cir. 1995), and Rule 33 motions
granted only "sparingly and in only the most extraordinary
circumstances." Ferguson, 246 F.3d at 134. In particular, a
trial court may disregard witness testimony only where it is
"patently incredible or defies physical realities." Sanchez,
969 F.2d at 1414. Thus, "[i]t is only where exceptional
circumstances can be demonstrated that the trial judge may
intrude upon the jury function of credibility assessment." Id.

### DISCUSSION

## I.   The Evidence Was Sufficient to Establish that Media Plaza
### Engaged in Interstate Commerce

In their Motions, Richardson and Williams argue that the
evidence adduced at trial was insufficient to establish the
interstate nexus required for Count One, conspiracy to commit
Hobbs Act robbery, or Count Two, attempted Hobbs Act robbery.
Based on this argument, Richardson and Williams move for a
verdict of acquittal pursuant to Federal Rule of Criminal
Procedure 29 on Counts One and Two of the Indictment.

In a Hobbs Act prosecution, proof that "commerce [wa]s
affected is critical since the Federal Government's jurisdiction
of this crime rests only on that interference." Stirone v.
United States, 361 U.S. 212, 218 (1960). However, "it is well
established that the burden of proving a nexus to interstate
commerce is minimal." United States v. Elias, 285 F.3d 183 (2d

Cir. 2002).  Accordingly, "[t]he jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a very slight effect on interstate commerce.  Even a potential or subtle effect on commerce will suffice."  United States v. Angelilli, 660 F.2d 23, 35 (2d Cir. 1981) (internal citations omitted); accord Jund v. Town of Hempstead, 941 F.2d 1271, 1285 (2d Cir. 1991) ("If the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act.").

For example, in Elias, a defendant was convicted of robbing $1400 in cash, cigarettes, subway MetroCards, telephone calling cards, and food stamps from a neighborhood grocery store in Queens.  The evidence that the robbery affected interstate commerce was that the grocery store in question sold beer brewed in Mexico and the Dominican Republic and fruit grown in Florida and California.  See Elias, 285 F.3d at 185-86.  The Second Circuit upheld the Hobbs Act conviction in this circumstance, finding it sufficient "that the beer and fruit . . . originated out-of-state."  Id. at 189.

In the instant case, the evidence at trial was sufficient to demonstrate the minimal connection to interstate commerce required under Second Circuit precedent.  Franco testified that, while reconnoitering Media Plaza several days before the alleged

8

attempted robbery, he noticed that the store carried a Sharp
Aquos television for sale.  (Tr. 594, 600-05.)  Pursuant to a
stipulation between the Government and all Defendants, Sharp
televisions have never been manufactured in New York State.
(See Tr. 1174-75.)

The Government also produced evidence that Media Plaza sold
Samsung televisions in the years prior to the robbery, and that
Samsung televisions have never been manufactured within New York
State.  (See Tr. 1173-74 (stipulation between the Government and
all Defendants that Samsung televisions have never been
manufactured in New York).)  Specifically, Lydia Vega, a mail
carrier for the United States Postal Service, testified that she
had seen a Samsung television inside Media Plaza at some point
prior to March 2008.  (See Tr. 460-61.)  Another witness, Darryl
Lewis, testified that he purchased a Samsung television set from
Media Plaza in March 2006.  (Tr. 738-39.)

This evidence is sufficient to establish the connection to
interstate commerce required under the Hobbs Act.  The Second
Circuit does not require that a defendant have intended or
anticipated that his actions would have an effect on interstate
commerce.  See, e.g., United States v. Silverio, 335 F.3d 183,
187 (2d Cir. 2003) ("We know of no court that has an intent
requirement for Hobbs Act prosecutions."); Vasquez v. United
States, No. 08 Civ. 860, 2008 WL 4787505 (S.D.N.Y. Oct. 30,

2008) ("It is not an element of a Hobbs Act offense . . . that the defendant have known that his conduct would have an effect on commerce."). In this case, as in Elias, "[s]ince the evidence at trial established that [the store] stocked goods originating out-of-state, the requisite indirect, minimal effect on interstate commerce was thereby sufficiently established." Elias, 285 F.3d at 189.

Therefore, the requisite connection to interstate commerce was established, and Defendants' Motions for a judgment of acquittal on this basis is DENIED.

## II. The Evidence Was Sufficient As to Each Defendant on the

### Firearm Count

Defendants challenge the sufficiency of the evidence as to their convictions on Count Three, the violation of 18 U.S.C. § 924(c), arguing that the Government did not establish their liability on this Count under either an aiding and abetting theory or any other. The Court disagrees.

Section 924(c) states that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A). "[T]he requirement in § 924(c)(1) that the gun be possessed in furtherance of a . . . crime may be satisfied by a

10

showing of some nexus between the firearm and the . . .

operation." United States v. Finley, 245 F.3d 199, 203 (2d Cir.

2001); see also United States v. Fleurissaint, No. 03 Crim. 906,

2005 WL 120350, at *4 (S.D.N.Y. Jan. 20, 2005) (internal

quotation omitted) ("To convict a defendant under the possession

prong of § 924(c), the government must establish that a firearm

was possessed 'in furtherance of' a [crime of violence], which

is satisfied if the firearm in some way helped, furthered,

promoted, or advanced the [crime].").

The Court instructed the jury as to three possible theories

of liability under Section 924(c): (1) direct or constructive

possession of the firearm during and in relation to, and in

furtherance of, the robbery conspiracy; (2) aiding and abetting

the possession of the firearm during and in relation to, and in

furtherance of, the robbery conspiracy; and (3) a Pinkerton

theory of liability, under which "a conspirator can be held

responsible for the substantive crimes committed by his co-

conspirators to the extent those offenses were reasonably

foreseeable consequences of acts furthering the unlawful

agreement, even if he did not himself participate in the

substantive crimes." United States v. Romero, 897 F.2d 47, 51

(2d Cir. 1990).

Defendants argue principally that the Government did not

prove that they aided and abetted Franco by facilitating and

11

promoting the use of the firearm. As the Second Circuit held in United States v. Medina, "a defendant . . . cannot be said to aid and abet the use or carrying of a firearm simply by aiding and abetting the overall enterprise in which the firearm is employed." Medina, 32 F.3d 40, 47 (2d Cir. 1994). Said otherwise, "mere knowledge that a gun would be used [is] legally insufficient to prove aiding and abetting its use." United States v. Wilkerson, 361 F.3d 717, 724 (2d Cir. 2004). Rather, in order to be liable under Section 924(c), a defendant must "both associate[] and participate[] in the use of the firearm in connection with the underlying crime." Medina, 32 F.3d at 46 (internal quotation omitted).

In the instant case, even assuming that only Franco committed the 924(c) offense under a direct theory of liability, Defendants aided and abetted Franco by facilitating and promoting the use of a gun in the planned armed robbery. See Medina, 32 F.3d at 47 ("It could be said that a defendant who is present but unarmed during the commission of a crime may (again, by the division of labor) make it easier for another to carry a firearm and therefore aid and abet that act."). Franco testified that each defendant knew the firearm was in the car and expected to benefit from its use during the robbery. Franco further testified that he had conversations with Gonzalez, Williams, and Richardson about the two guns, and that each of

12

Defendants knew that one of the guns was a real firearm.  (See Tr. 661-72.)  Gonzalez and Williams each played a role in procuring the gun.  (Tr. 664-65.)

It is therefore clear that each of Defendants was "present . . . at the scene" and planned to play "a critical supportive role in the armed robbery."  United States v. Gomez, 580 F.3d 94, 103 (2d Cir. 2009).  Unlike in Medina, the evidence demonstrates that "[D]efendant[s] joined and shared in the underlying criminal endeavor" and that their efforts would have "contributed to its success."  United States v. Pipola, 83 F.3d 556, 562 (2d Cir. 1996).

Accordingly, because the evidence was sufficient to convict Defendants of a Section 924(c) violation on an aiding and abetting theory of liability, Defendants' Motions for a judgment of acquittal, or, alternatively, for a new trial on this basis must be DENIED.

## III.   The Evidence Was Sufficient As to Each Defendant on the

### Attempted Robbery Count

In their Motions, Defendants argue that the Government did not introduce sufficient evidence for a reasonable factfinder to convict Defendants of the crime of attempted robbery. Specifically, Defendants claim that the Government failed to show that Defendants took a "substantial step" towards commission of the crime, as distinguished from mere preparation.

13

"In order to establish that a person is guilty of an attempt to commit a crime, the government must prove that he (1) had the intent to commit the crime, and (2) engaged in conduct amounting to a 'substantial step' towards the commission of the crime." United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993). A substantial step "may be less than the last act necessary before the actual commission of the substantive crime," but it "entails more than mere preparation." Id. As explained in United States v. Stallworth, "the defendant must have engaged in conduct . . . strongly corroborative of the firmness of the defendant's criminal intent." Stallworth, 543 F.2d 1038, 1040 (2d Cir. 1976).

In the instant case, the evidence at trial demonstrated that Defendants intended to commit an armed robbery of Media Plaza, and that Defendants took substantial steps towards committing this robbery before the police interrupted their plans. Franco's testimony, the testimony of several New York City Police Department ("NYPD") officers, phone records submitted by the Government, and the physical evidence recovered by the NYPD make clear that: (1) Defendants obtained the necessary equipment and weapons to commit a robbery, including one handgun, one starter pistol, latex gloves, duct tape, and a business card for the target store, Media Plaza (see, e.g., Tr. 665-68, 671-74); (2) Defendants loaded all of these materials

14

into Franco's Honda Accord (Tr. 669-74); (3) Defendants drove to
Media Plaza on the night in question (Tr. 675-77); (4) Gonzalez
exited the car to check out the area on behalf of the group (Tr.
681-86); (5) Gonzalez and Richardson spoke to one another over
the point-to-point service of their cellular telephones while
Gonzalez was outside the car and Richardson inside (Tr. 683-86);
and (6) Gonzalez put on his latex gloves before leaving the car
for the final time (Tr. 689-90).[1]

This testimonial and physical evidence provided ample basis
from which a reasonable mind might conclude guilt beyond a
reasonable doubt. See Irving, 452 F.3d at 117. As in United
States v. Jackson, "[Defendants] reconnoitered the place
contemplated for the commission of the crime and possessed the
paraphernalia to be employed in the commission of the crime . .
. which could serve no lawful purpose under the circumstances. .
. . [E]ither type of conduct, standing alone, was sufficient as
a matter of law to constitute a 'substantial step' if it
strongly corroborated their criminal purpose." Jackson, 560

---

[1]     Franco testified that Gonzalez left the car for the final time with a
"mask," (see Tr. 689,) and the Government repeatedly references
Gonzalez's alleged possession of a mask in making its argument that
Defendants were on the verge of robbing Media Plaza on March 25, 2008
(see, e.g., Gov't Opp'n 30). However, as Williams notes in his pro se
reply brief, Detective Badyna testified that when he arrested Gonzalez,
Gonzalez had on a wool hat, not a mask. (See Williams Pro Se Reply 3;
Tr. 453.))   Therefore, because the mask allegedly carried by Gonzalez
was not recovered, the Court does not rely on this evidence in making
its determination that the Government did present sufficient evidence
for a reasonable factfinder to find Defendants guilty of attempted
robbery.

F.2d 112, 120 (2d Cir. 1977).  In fact, "[a] jury could properly
find that preparation was long since completed.  All that stood
between [Defendants] and success was a group of . . . police
officers."  Stallworth, 543 F.2d at 1041.

Because the jury heard ample evidence that Defendants
intended to commit an armed robbery of Media Plaza and that they
took substantial steps towards achieving this objective,
Defendants' Motions for a judgment of acquittal on the attempted
robbery count must be DENIED.

## IV.  Defendants Were Not Deprived of a Fair Trial Because of the

### Government's Summation

Williams argues that the Court should have granted a
mistrial because, during rebuttal, the Government improperly
referenced a tip the police had received about possible criminal
activity at Media Plaza on the night of March 25, 2008.
Specifically, Williams argues that the Government's argument
exceeded the scope of the Court's ruling on the admissibility of
the "tip" and unfairly bolstered the Government's case.  Based
on this alleged error, Williams requests that the Court grant a
new trial pursuant to Rule 33 of the Federal Rules of Criminal
Procedure.

As the Second Circuit held in United States v. Rodriguez,
"[w]hether a prosecutor's improper statement during summation
results in a denial of due process depends upon whether the

16

improper statement causes substantial prejudice to the
defendant."   968 F.2d 130, 142 (2d Cir. 1992); see also Elias,
285 F.3d at 190 ("To warrant reversal, the prosecutorial
misconduct must cause the defendant substantial prejudice by so
infecting the trial with unfairness as to make the resulting
conviction a denial of due process.").   "Reversal is warranted
only where the statements, viewed against the entire argument
before the jury, deprived the defendant of a fair trial."
United States v. Forlorma, 94 F.3d 91, 94 (2d Cir. 1996)
(internal quotation omitted).   Because improper remarks in
summation must be viewed against the context of the entire
trial, "[i]t is a rare case in which improper comments in a
prosecutor's summation are so prejudicial that a new trial is
required."   Rodriguez, 968 F.2d at 142.

In assessing the alleged misconduct, the Court considers
"the severity of the misconduct, the measures adopted to cure
it, and the certainty of conviction in the absence of the
misconduct."   United States v. Parkes, 497 F.3d 220, 233 (2d
Cir. 2007).   In the instant case, as in United States v. Modica,
"the prosecutor's offending behavior was confined to [the]
summation:   [the] opening statement and . . . conduct throughout
the . . . trial were free of improper remarks."   663 F.2d 1173,
1181 (2d Cir. 1981).   Moreover, the improper statement was an
isolated remark in the Government's lengthy summation and

17

rebuttal argument. See Parkes, 497 F.3d at 234 ("Isolated remarks are ordinarily insufficient to warrant reversal." (internal quotation omitted)). Ultimately, the challenged statements were an aberration in an otherwise fair proceeding, and did not result in such substantial prejudice as to result in the denial of Defendants' right to a fair trial. See, e.g., Elias, 285 F.3d at 191 (stating that "the severity of the misconduct is mitigated if the misconduct is an aberration in an otherwise fair proceeding").

Likewise, any harm that could have derived from the Government's misstatement was remedied by the Court's (1) sustaining Defendants' objection to the improper remark and (2) instructing the jury not to consider any of the information given to the police for its truth. (See Tr. 1520-21;) see also Forlorma, 94 F.3d at 95 ("Generally, we would not reverse a criminal conviction merely because a prosecutor made an unsupported statement in argument—especially where the trial judge sustained the defendant's objections to it."). While the fact that the jury later requested testimony on the tip indicates that the information was an object of interest in deliberations (see Tr. 1594,) the Court instructed the jury in response to this note that "it would be absolutely improper for you to speculate on what alleged information the police received. . . . You cannot use it in any way whatsoever to

18

determine your verdict as to any defendant in this case" (Tr. 1609). These instructions were clear and definitive, and cured any possible prejudice that might otherwise have resulted from the Government's improper remark. See, e.g., Shotwell Mfg. Co. v. United States, 371 U.S. 341, 367 (1963) (finding that when a "limiting instruction is clear . . . . [i]t must be presumed that the jury conscientiously observed it"); United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

Finally, the trial record indicates that Defendants would have been convicted even without the improper remarks. See, e.g., Elias, 285 F.3d at 192 ("To prevail, [the defendant] had to show that, absent the isolated impropriety of the prosecutor in rebuttal summation (taken in the context of the entire trial), [he] would not have been convicted."). Defendants were caught with all of the tools needed to commit a successful armed robbery, and a co-conspirator, Franco, gave detailed testimony as to their plans to rob Media Plaza. This was sufficient evidence for a reasonable factfinder to convict them on all counts.

Accordingly, the Government's improper remark during summation did not deprive Defendants of a fair trial, and Williams's Motion for a mistrial on this basis is DENIED.

19

## V.   The Evidence Was Sufficient as to Gonzalez on the Narcotics

### Count

Gonzalez argues in his Motion that the evidence at trial was insufficient to establish that he possessed crack with intent to distribute at the time of his arrest.  Specifically, Gonzalez argues that Detective Patrick McKernan, one of the officers present when Gonzalez was strip-searched following his arrest and the drugs hidden in his buttocks found, improperly testified as an expert witness on the question of whether the drugs carried by Gonzalez were more likely to be for personal use or for distribution.  Gonzalez claims that because Detective McKernan's allegedly improper testimony was the Government's only basis for arguing that Gonzalez carried crack for distribution rather than for personal use, the conviction for possession with intent to distribute should be vacated.

The Court disagrees.  Detective McKernan testified that he had personally been involved in hundreds of narcotics-related arrests, including over one hundred arrests of crack purchasers from whom he recovered crack.  (Tr. 1052-56.)  Detective McKernan further testified that the average amount of crack recovered from a crack user was one or two bags of crack (Tr. 1056,) and that he could not recall ever recovering more than five bags of crack from a crack user (Tr. 1092.)

20

The Government relied on Detective McKernan's testimony to argue at summation that, because Gonzalez had more than twenty individually packaged bags of crack, he was a distributor than a user. (See Tr. 1393.) However, Detective McKernan's testimony in itself was limited to what he saw in his personal experiences. As a fact witness, Detective McKernan did not offer any opinion on the significance of the quantity of crack that Gonzalez was carrying at the time of the arrest, nor did he venture into any other areas reserved for properly qualified expert witnesses.

Moreover, Detective McKernan's testimony was not the only evidence from which the jury could have concluded that Gonzalez intended to distribute the crack in his possession. For example, a conviction for possession with intent to distribute may be supported by evidence that the defendant carried a large quantity of drugs which most likely would exceed an amount desired for personal consumption. See United States v. Gaviria, 740 F.2d 174, 185 (2d Cir. 1984). Intent to distribute has also been inferred in cases "where small amounts of drugs have been packaged in a manner consistent with distribution." United States v. Garrett, 903 F.2d 1105, 1113 (7th Cir. 1990), cited in United States v. Wallace, 532 F.3d 126, 131 (2d Cir. 2008).

Moreover, it is undisputed that that Gonzalez was not carrying a pipe or any other equipment necessary to use crack

21

cocaine at the time of his arrest.  (See Tr. 360-61.)  The jury

could certainly consider the absence of materials frequently

found on drug users in finding that Gonzalez was a dealer rather

than an addict.  See, e.g., United States v. Gamble, 388 F.3d

74, 76-77 (2d Cir. 2004) (noting, in the course of upholding a

conviction for possession of crack with intent to distribute,

that the Government "demonstrated an absence of any indication

that [defendant] smoked or otherwise ingested the cocaine base

himself" and that "[n]o pipes, cigarettes, cooking implements,

or other paraphernalia normally associated with personal drug

use were found" in a search of defendant's apartment).

Because Detective McKernan's testimony was perfectly

proper, and because the jury could reasonably infer from the

evidence presented that the crack Gonzalez possessed was for

distribution rather than personal use, Gonzalez's motion for a

judgment of a acquittal or a new trial on this basis is DENIED.

VI.  The Court Did Not Err in Failing to Instruct the Jury on an

    Overt Act Requirement for the Hobbs Act Conspiracy Count

Richardson and Williams both argue that the Court

improperly failed to instruct the jury with respect to an overt

act requirement for the Hobbs Act conspiracy count.  (See

Richardson Mot. 16-18; Williams Mot. Ex. A ("Williams Pro Se

Mot.") 4.)  This argument fails because there is no overt act

requirement for conspiracy to commit robbery under 18 U.S.C. §

1951.  See, e.g., United States v. Clemente, 22 F.3d 477, 480

(2d Cir. 1994) ("In order to establish a Hobbs Act conspiracy,

the government does not have to prove any overt act."); United

States v. Maldonado-Rivera, 922 F.2d 934, 983 (2d Cir. 1990)

("The government need not prove an overt act in order to

establish a Hobbs Act conspiracy.").  Therefore, the Court did

not err in failing to deliver an overt-act instruction.

     Accordingly, Richardson and Williams's Motions for a

verdict of acquittal or, in the alternative, for a new trial on

this basis is DENIED.

### VII. The Indictment Was Not Unconstitutionally Vague

     Williams argues that Counts Two and Three are "duplicitous

and vague."  (See Williams Pro Se Mot. 9-12; Williams Reply Mot.

Ex. A ("Williams Pro Se Reply") 9.)  Specifically, Williams

argues that Count Two was vague because "it utterly fails to

describe the acts concerning who did what to aid and abet whom"

(Williams Pro Se Mot. 9) and duplicitous because it "charges two

distinct offenses, Title 18 U.S.C. 1951 and 2."  (Id.)  Williams

further argues that Count Three was vague, because "it charges

the defendants with aiding and abetting, but there are no facts

in the indictment to determine who did what to aid and abet

whom."  (Id. 10.)

     Contrary to Williams's assertions, the Indictment was

neither duplicitous nor vague.  The Sixth Amendment guarantees

that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. To satisfy these requirements, however, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Stavroulakis, 952 F.2d 686, 963 (2d Cir. 1992). Stated otherwise, the Constitution requires only that an indictment contain the elements of the offense in sufficient detail to fairly inform the defendant of the charges he must meet and to enable him to plead double jeopardy in any future prosecution for the same offense. See United States v. Resendiz-Ponce, 549 U.S. 108 , 107-08 (2007). The Indictment in the instant case provided Williams with ample notice of the charges against him, and thus satisfied the constitutional requirements of the Sixth Amendment.

To the extent that Williams objects to the fact that the jury was charged with alternate theories of liability on Counts Two and Three, this argument also fails. As the Second Circuit noted in United States v. Masotto, "[w]hen the jury is properly instructed on two alternative theories of liability, as here, we must affirm when the evidence is sufficient under either of the theories." Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996); see also Copeland-El v. United States, No. 08 Civ. 1383, 2008 WL 5220829,

24

at *1 (E.D.N.Y. Dec. 12, 2008) ("The Court instructed the jury
as to aiding and abetting and Pinkerton liability on the
unlawful use of a firearm count pursuant to 18 U.S.C. § 924(c).
There is nothing inappropriate about a jury being presented with
multiple theories of liability.").

Because the Indictment was neither vague nor duplicitous,
Williams's Motion for a new trial on this basis is DENIED.

## VIII.  Mark Franco's Alleged Perjury Does Not Warrant a New
## Trial

Williams claims that Franco perjured himself on a number of
points during his testimony, and thus that this Court should
grant Williams a new trial pursuant to Federal Rule of Criminal
Procedure 33.  (See Williams Pro Se Reply 2-4.)

In the Second Circuit, perjury requires a showing that a
witness gave "false testimony concerning a material matter with
the willful intent to provide false testimony, as distinguished
from incorrect testimony resulting from confusion, mistake, or
faulty memory.  Simple inaccuracies or inconsistencies in
testimony do not rise to the level of perjury." United States
v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001).

Once this threshold demonstration of perjury has been met,
however, a new trial is not foreordained.  On the contrary:

> Whether the introduction of perjured testimony requires
> a new trial depends on the materiality of the perjury
> to the jury's verdict and the extent to which the

25

prosecution was aware of the perjury. With respect to
this latter inquiry, there are two discrete standards
of review that are utilized. Where the prosecution
knew or should have known of the perjury, the
conviction must be set aside if there is any reasonable
likelihood that the false testimony could have affected
the judgment of the jury. Indeed, if it is established
that the government knowingly permitted the
introduction of false testimony reversal is virtually
automatic. Where the government was unaware of a
witness' perjury, however, a new trial is warranted
only if the testimony was material and the court is
left with a firm belief that but for the perjured
testimony, the defendant would most likely not have
been convicted.

United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991)

(internal quotations omitted). In the instant case, even

assuming that Franco's statements were in fact deliberately

false, Williams has submitted no evidence indicating that the

Government was aware or should have been aware of Franco's

perjury. Therefore, the question must be analyzed under the

second standard: whether the Court believes that, but for the

challenged testimony, Williams would not have been convicted.

See id.

Analyzed in that light, the Court finds that Williams would

have been convicted even without the challenged statements by

Franco. The factual points that Williams attacks are

tangential: for example, the questions of (1) whether Williams,

or any of Defendants, were members of the Bloods, (2) whether

Gonzalez had a mask when he left the Honda Accord for the final

time, and (3) who recruited the owner of the 16-passenger van to

26

assist with the robbery.  (See Williams Pro Se Mot. 1-3;

Williams Pro Se Reply 1-4.)  Even if Franco's statements were

false on these points, this testimony would not have affected

the jury's verdict.  Given the weight of evidence against

Williams, this Court cannot find that "the jury probably would

have acquitted in the absence of the [allegedly] false

testimony."  United States v. McCourty, 562 F.3d 458, 476 (2d

Cir. 2009).

    Accordingly, Williams's Motion for a new trial on the basis

of Franco's alleged perjury is DENIED.

### CONCLUSION

    For the reasons stated above, Defendants' Motions for a

judgment of acquittal or, in the alternative, for a new trial

are DENIED in their entirety.

**SO ORDERED:**

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
           May 11, 2010